[Civ. No. 10105.   First Appellate District, Division One.—January 26, 1937.]

C. I. T. CORPORATION, Respondent, v. AMERICAN CENTRAL INSURANCE COMPANY (a Corporation), Appellant.

Ralph H. Lachmund for Appellant.

Emery F. Mitchell and Charles V. Barfield for Respondent.

THE COURT.—This is an appeal by defendant from a judgment in favor of the plaintiff for the sum of $3,900 and costs of suit in an action upon a policy of insurance of an automobile-truck against fire, theft and collision damage, the ground of recovery being the theft of said truck.

The facts are that the plaintiff, being engaged in the business of financing the sale of automobiles, took from the Federal Truck Company, whose place of business is situated in Los Angeles, an assignment of a contract of conditional sale of a Federal truck made by it to one Glenn Housley, who was engaged in the business of hauling at Las Vegas, Nevada. As a down payment Housley turned in a used Reo truck at an agreed valuation of $1350 and received credit in that amount upon the purchase price. This contract was made and dated on January 7, 1930, and delivery of the truck forthwith made. On February 10th following the used Reo truck was taken from the Federal Truck Company upon a writ of replevin, and the fact transpired that Housley had no title to it. Upon receiving this information the plaintiff immediately instructed Federal Truck Company to repossess from Housley the Federal truck, the right so to do being reserved to the vendor and its assignee under the conditional sale contract, and on Febru-

ary 12th this was done. The truck was thereupon placed in a large open lot adjoining the working establishment of Federal Truck Company, used for storing and exhibiting used cars of that concern, and there offered for sale, and so continued until May 8, 1930, when some time in the evening between 5 and 9 o'clock it was stolen. The open lot in question was surrounded by a substantial wire fence, with a gate opening on to the street. This gate was kept closed and locked from 9 o'clock P. M. until 7:30 A. M. the following day, but at all other times was left open. During the day and until 5 o'clock P. M. a salesman or attendant was in the lot in charge of the automobiles stationed there, but from that time until 9 P. M. the lot was unattended and the gate open and unlocked. The position in the lot assigned to the truck was within 25 feet of the open gate, the truck was provided with no locking device to prevent its operation or removal, and, being new and attractive in appearance, was calculated to arrest the attention of passers-by. There was an open door from the side of the working establishment to the lot, and workmen in the shop could in their moments of relaxation see some part of the lot, not including, however, the vicinity of the truck. On the evening in question workmen were occupied in the shop welding the frame of an automobile.

The insurance policy was issued on February 10, 1930, and is referred to in the record as certificate of insurance No. 169,690. There had been theretofore issued by the defendant to the plaintiff a so-called master policy, containing certain general terms destined, by reference, to be incorporated in certificates of insurance thereafter issued, thus obviating the inclusion specifically of these terms in each of such subsequently issued certificates. This master policy by itself insured nothing: it covered no specific property, called for no premium and had no specified duration. By the combined terms of the certificate of insurance and the master policy the defendant insured the plaintiff as lessor, and Glenn Housley as lessee, against loss on said Federal truck through theft and other perils, loss, if any, payable to plaintiff and Housley as the interest of each might appear. In the certificate of insurance Housley's residence was stated to be Las Vegas, Nevada, and said certificate contained the following provision: ''The following are statements of

fact known to and warranted by the assured to be true, and this policy is issued by the company relying upon the truth thereof. Breach of any warranty renders this policy null and void." Among such statements were: "Purchaser's occupation or business is trucking—self." "Unpaid balance, $4,019.40." "The uses to which the automobile described are and will be put are business and/or pleasure."

In the master policy are found the following provisions, among others: "Warranted by the assured. . . . The automobile described is usually kept in garage located State of Nevada." "This policy shall be void in event of violation by the assured of any agreement, condition or warranty herein contained. . . . " "Title and ownership. . . . This entire policy shall be void . . . in case of transfer or termination of the interest of the assured other than by death of the assured, or in case of any change in the nature of the insurable interest of the assured in the property described herein, either by sale or otherwise." "This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The plaintiff in bringing this action sued alone, not joining Glenn Housley either as party plaintiff or defendant, and this fact was relied upon by defendant as one of its defenses.

In support of its appeal the defendant makes the following contentions:

(1) That the court erred in entertaining the action without joining Glenn Housley as a party.

(2) The policy was avoided by termination of Housley's interest in the Federal truck and by the change of plaintiff's interest therein.

(3) That it was avoided by the violation of assured's warranty that the truck described was usually kept in garage located in the state of Nevada.

(4) That it was avoided by breach of the warranty that the truck was to be used by Housley in his business of trucking at Las Vegas, Nevada, or for his pleasure, since at the time of its theft it had for nearly three months been

repossessed by plaintiff and kept in an unguarded lot adjacent to a public street in Los Angeles under conditions which largely increased the risk of loss.

(5) That it was avoided by breach of the warranty respecting the facts of the purchase of the truck in the respect that it was represented that the sum of $1350 had been paid down on the purchase price, whereas no money had been paid, but a used Reo truck turned in at an agreed valuation of that amount.

(6) That it was avoided by false swearing of the plaintiff in its proof of loss in that plaintiff represented that at that time Housley's interest in the truck was $1350, whereas the truth was, and known to plaintiff, that he had no interest whatever therein.

We are of the opinion that with the exception of the fifth these contentions must be sustained.

■ Glenn Housley, being one of the assured under the policy, was a necessary party to the action (*Security Ins. Co.* v. *Superior Court,* 71 Cal. App. 701 [236 Pac. 335, 336]), in which case the court said: "Where a policy of insurance is payable to several persons as their interests may appear there is no question that in an action at law they must join as plaintiffs or, in the event of the refusal of one or more of them so to join, he or they must be made parties defendant."

■ The repossession by the plaintiff of the Federal truck terminated the interest of Housley, the vendee, which created a breach of the warranty of title above set out; and it also changed the nature of the interest of the plaintiff, since by termination of the conditional sale contract the relation of lessor and lessee was extinguished and the plaintiff resumed full ownership of the property. Its interest was also changed by the fact that under the express provisions of the contract the risk of loss was borne by the lessee or vendee, but this risk was reassumed by the plaintiff through termination of the contract by repossession.

■ The repossession of the Federal truck and its storage and display for sale in the open, unguarded lot in Los Angeles during a period of nearly three months—almost the entire life of the policy—also created breaches of the warranties contained in the policy that the truck would usually be kept in garage located in the state of Nevada, and that

the uses to which it would be put were in the business of Glenn Housley described as "trucking—self" or for his pleasure. That this change in location and use was material to the risk is obvious; and it was testified by a witness for the defendant, and uncontradicted, that the rate of premium on an automobile truck kept in the open lot described under the conditions narrated in the testimony was exactly ten times that paid by plaintiff on this policy.

■ As stated above, we are of the opinion that the appellant's fifth contention, namely, that there was a breach of the warranty that the lessee or vendee of the truck had made a down payment thereon of $1350, since this payment was in the form of the transfer of a used Reo truck accepted at that valuation, is not well taken. In this connection it is argued by the appellant that the representation by the plaintiff that $1350 had been paid upon the truck means that this was a payment in money; and he cites from Bouvier's Law Dictionary (Rawle's ed., vol. II, p. 635) the definition of "payment" as "the discharge in money of a sum due". This, however, is not the entire definition given by Bouvier, which is: "Payment. The fulfilment of a promise or the performance of an agreement; the discharge in money of a sum due." The acceptance, by the vendor of a new automobile, of one that has been used, as part payment therefor is so general that if the defendant in this case had wished to know if the payment of $1350 had been made in money it was its duty to make the specific inquiry. "Ordinarily, in the absence of fraud, a failure of insured to disclose a fact with reference to which no questions are asked is not such a concealment as will avoid a policy." (32 Cor. Jur., Insurance, sec. 488, p. 1272.)

■ The plaintiff submitted to the defendant a proof of loss. It did not meet the defendant's requirements inasmuch as it did not state "the interest of the assured and of all others in the property or the sound value thereof". The defendant called these defects to the plaintiff's attention and requested that the information be specifically furnished. In response the plaintiff furnished a "sworn statement in proof of loss", in which it stated that there was "paid on purchase price by assured $1350. Balance due C. I. T. Corporation $4,019.40." The plaintiff at this time well knew that the assured Housley had no interest in the prop-

erty . and that, by reason of his having no title to the used Reo truck, the purported down payment, and it having been replevined and returned to its rightful owner, he had in fact made no down payment. The defendant's sworn statement was, therefore, false, and its effect was to avoid the policy irrespective of its materiality. "A policy may declare that a violation of specified provisions thereof shall avoid it, otherwise a breach of an immaterial provision does not avoid the policy." (Civ. Code, sec. 2611; *Victoria S. S. Co.* v. *Western Assur. Co.*, 167 Cal. 348 [139 Pac. 807].) We have seen that the policy here considered provided that a false statement under oath, whether before or after a loss, would avoid it.

It is urged by the respondent that the well-settled rule that policies of insurance are to be given a liberal construction in favor of the insured justifies recovery in this case. It points out that the defendant knew the nature of the business in which the plaintiff was engaged, and that in a certain proportion of sales under conditional contracts the article sold is retaken by the vendor by reason of the vendee's default in carrying out the terms of his undertaking; that when such a contingency occurs there is necessarily a change in the nature of the interest of the assured therein and its place of keeping, and that the policy should be construed as contemplating this contingency. On the other hand, while such repossessions sometimes do take place conditional sales contracts usually result in complete payment by the vendee, and the insurance here involved was obviously written with the expectation that such would be the case in this instance. We think it would be a very strained construction of this policy of insurance to hold that during the three months that the truck was exposed for sale in the Los Angeles lot under the conditions described, with the consequent increase of risk involved, there was no violation of its terms. When such a radical change in the conditions of the risk contemplated by the parties when entering into the contract of insurance arose the necessary and obvious thing for the plaintiff to do was to procure a suitable modification of its terms, which could have been readily effected by rider attached to the policy and payment of the appropriate additional premium. Especially should this course have suggested itself to the plaintiff, who,

in addition to carrying on its finance business, was a general agent of the defendant for the purpose of countersigning policies in the state of Nevada.

For the foregoing reasons the judgment is reversed.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1937.