102 P.2d 659

### ALLISON v. NIEHAUS.

### No. 4514.

Supreme Court of New Mexico.

May 8, 1940.

Rehearing Denied May 29, 1940.

E. E. Young, of Roswell, for appellant.

W. A. Keleher and A. H. McLeod, both of Albuquerque, for appellee.

BICKLEY, Chief Justice.

This is an appeal from the District Court of Bernalillo County from a judgment for the appellee in an action of replevin to recover a trailer-house in possession of the appellant. The defendant (appellant here), being employed by the plaintiff (appellee), arranged with the latter for purchase of a trailer-house so his family might live with him at Chama where he was working. Plaintiff paid for the trailer and took a bill of sale from the trailer factory in his own name. Defendant received immediate possession of the trailer and was charged with the purchase price on an open account on plaintiff's books. Payments on the account, which included numerous other and smaller items, were made by deductions from defendant's wages. No specific credits were made against the trailer charge nor against any of the other items, but all were carried to a general balance.

By appropriate motions defendant challenged the sufficiency of the evidence to establish that it was the intention of the parties that the title to the property was to be held in the seller. The court, at the conclusion of plaintiff's case, expressed grave doubt as to the retention of the title by the seller (plaintiff) but required the defendant to go forward with his evidence. At the conclusion thereof the defendant renewed the motion made at the conclusion of plaintiff's testimony. The court again expressed his doubts but announced his view in findings of fact, reserving decision until counsel should have an opportunity to submit briefs. Among these findings were the following: "Plaintiff contends that it was his intention to reserve title in himself to the trailer until such time as the trailer was paid out. The Court finds that such was the intention of the plaintiff. The defendant is rather hazy on just what the details of

the transaction were, from the standpoint of where title was. The Court is inclined to believe, and so finds, that the defendant didn't give any particular consideration to the question of whether there was a title reservation in the plaintiff, or whether there wasn't. In other words, all the defendant was interested in was getting the trailer and having time to pay it out. I think that is probably the true state of affairs, but the plaintiff intended to reserve title to protect himself and defendant was only interested in getting the trailer, and trying to pay it out as he worked, and never gave a thought as to whether the trailer, by means of a reservation of title in plaintiff, stood as security or whether it didn't."

The court also found at the request of defendant: "That there was no contract or meeting of minds between the Plaintiff and defendant as to a conditional sales contract or reservation of title to the trailer in the Plaintiff."

The court refused to make plaintiff's requested findings No. 3 and 5, as follows:

"3. That before the trailer was purchased, plaintiff informed the defendant that title to the trailer should remain in plaintiff's name until same was fully paid for. That plaintiff told defendant that when the trailer was fully paid out plaintiff would execute a bill of sale for said trailer to defendant. That it was agreed between plaintiff and defendant that defendant should pay interest on the unpaid amount due on the trailer.

 \* \* \* \* \*

"5. That plaintiff and defendant intended that title to such trailer would not pass to defendant until defendant had paid plaintiff in full for said trailer."

The court, however, adopted plaintiff's requested conclusion of law No. 1: "1. That plaintiff is the owner of the trailer, and has been the owner of said trailer at all times material hereto."

Appellant assigns error that this conclusion of law is contrary to and not supported by the findings of fact. For reasons hereafter appearing, we find it unnecessary to discuss that question in all its phases and we have recited this much of the record because it illustrates one of the reasons for the enactment of our statutes requiring that conditional sales contracts shall be in writing. Since the contract in the case at bar is not in writing, that disposes of the question of insufficiency of the evidence to show the existence of a contract for the retention of the title in the seller.

■ By the principles of the common law, a contract of conditional sale need not be in writing to be valid. This is a statement not susceptible of embellishment. In some states there are statutes expressly directing that they must be in writing, and in others the implication necessarily arises. Jones Chattel Mortgages and Conditional Sales, Sec. 980.

Since this question raised by appellant has not heretofore been directly passed on by us, it seems worthwhile to state our reasons for so construing our statute.

The New Mexico Territorial court, at an early day, though feeling itself constrained to uphold conditional sales contracts, nevertheless, expressed itself in sympathy with those courts which have voiced their disapproval of conditional sales agreements. Said the court in the case of Redewill v. Gillen, 4 N.M. 78, at page 84, 12 P. 872, 877: "These Illinois, Kentucky, and New York cases proceed upon the principle that, when one of two innocent persons must suffer by the fraud of a third, the one who puts it in the power of such third person to do the wrong should bear the injury. This position seems almost impregnable, and appeals strongly to our sense of justice, and we should hold with them, and thus uproot in this jurisdiction what we consider a pernicious system of secret titles concealed in the pockets of the owner, and calculated to entrap the unwary, were we not impelled by an overwhelming weight of authority to the contrary."

Thus, while holding with the majority of courts that the conditional sales contract where not written was enforceable even as against innocent purchasers, the court decried such a result. The Territorial court abhorred secret titles concealed in the pockets of their owners even when written. How much more must it have abhorred them in absence of even a writing to detect their concealment.

Later in the case of Redewill v. Gillen, supra, the New Mexico court comments upon a decision of the United States Supreme Court in Harkness v. Russell, 118 U.S. 663, 7 S.Ct. 51, 30 L.Ed. 285, which declared itself in support of the majority view and said: "In many states, however, the hardships that have resulted from the enforcement of this rule in favor of designing and wicked persons having been seen, laws have been passed invalidating all such contracts, and we venture to hope that the legislature will adopt some such salutary law here."

Thus the court strongly suggested to the legislature that since it found itself helpless to remedy this evil, it lay within the power of the Legislature to invalidate all such conditional sales contracts which were not put on record, and that of necessity would include all oral conditional sales agreements because there would be no manner in which to file or record them. It is significant to note that the court made this expression of its sentiments in a case in which it felt itself constrained to hold that the recording acts requiring chattel mortgages to be recorded did not apply to conditional sales of chattels.

Thus, apparently in response to the decision in Redewill v. Gillen, supra, the Territorial Legislature, during the very next session in 1889, amended the old chattel mortgage law so as to read as follows: "All chattel mortgages, or other instruments of writing, having the effect of a mortgage or a lien upon personal property, shall be acknowledged by the owner or mortgagor and recorded in the same manner as conveyances affecting real estate."

Laws of New Mexico of 1889, Chap. 73, Sec. 1.

Taking cognizance of the fact that the term "conditional sale" had not then come into general use, the legislature may well have felt the act remedied the evil. Nevertheless, in the case of Maxwell v. Tufts, 8 N.M. 396, 45 P. 979, 33 L.R.A. 854, the court found that the provision of "other instruments of writing having the effect of a mortgage or a lien upon personal property" still did not embrace conditional sales agreements.

Sec. 2 of Chap. 71, Laws of 1915, was a re-enactment of Sec. 1, Chap. 73, Laws of 1889, and consequently was subject to the same limitation brought out in the Maxwell case, supra. Whether the lack of a provision in the 1915 act to cover conditional sales agreements induced the legislature to amend the act in 1917 we are not prepared to say, but that the legislature had in mind to correct the defect brought out by Maxwell v. Tufts, supra, appears impelling when we consider the wording of the 1917 act: "That hereafter all chattel mortgages, conditional sales, * * * having the effect of a mortgage or lien upon personal property, or that are intended to hold the title in the former owner, possessor or grantor until the value or purchase price is fully paid, shall be acknowledged by the owner or mortgagor." L.1917, Ch. 74.

Here the legislature expressly remedied the defect brought out by the Maxwell case and expressly provided that the conditional sales contracts should be acknowledged by the owner. This provision leaves some question as to who the legislature meant by owner, but this ambiguity was clarified in the 1923 revision by the use of the words "seller and purchaser". The expression "any such instrument in writing" in the 1917 act indicates that the legislature assumed that to be effective any agreement to reserve title in the seller would necessarily be in writing. That was taken for granted; what the legislature was intent upon doing now was to make certain that after these instruments were written they didn't remain in their maker's pocket but that they would be acknowledged and then filed or recorded in order that innocent third parties might be protected.

How natural it is to conclude from reading even these earlier statutes that the legislature imposed some formal requisites for the valid execution and effectiveness of contracts of this nature is reflected in the statement of Mr. Fred Benson Haring, a leading text writer and student of conditional sales in his treatise entitled "The Law of Conditional Sales, Revised Edition." He observed under the heading "How Executed" that in New Mexico: "they (conditional sales agreements) must be in writing and should be signed by all parties thereto." Page 251.

We would not be surprised if the great increase in instalment sales in the early twenties was a reason for the legislature working the subject over at its 1923 session. The enactment is Chap. 8 of the Session Laws of 1923 (Chap. 21, Art. 3, N.M.

S.A.). Section 1 is as follows: "That hereafter all Conditional Sales Contracts, Leases, Purchase Leases, Sale Leases, or other instruments in writing that are intended to hold the title to personal property in the former owner, possessor or grantor, shall be acknowledged by the seller and purchaser, lessor and lessee, as the case may be, in the same manner as conveyances affecting real estate."

Section 2 provides that the instruments described in Section 1 shall either be recorded or filed. Section 3 says that such instruments so recorded or filed shall have the effect given to the recording of an instrument affecting real estate. Section 4 provides that the failure to so record or file "any such instrument in writing" shall render the same void as to subsequent purchasers in good faith, purchaser for value without notice, subsequent judgment or attaching creditors without notice, etc. In McAusland v. Rieser, 82 N.J.Eq. 614, 90 A. 261, 262, the court said: "Statute does not require, in so many words, that the contract of conditional sales should be in writing, but this must be implied, since it would be impossible to acknowledge or prove a mere oral contract, and it would be unusual, if not impossible, to record such a contract as our statute directs."

 But it is suggested by appellee that these statutes were enacted solely for the protection of third parties and that an oral contract of conditional sale is valid as between the parties to the contract. We do not agree. In Maxwell v. Tufts, supra, the court pointed out some of the characteristics and consequences of such contracts, among them being that the vendor's title is subject to execution; that the increase which occurs pending the performance of the conditions belongs to the vendor, though if the transaction were merely a pledge it would belong to the pledgee; that such property is not liable for rent to the landlord of the vendee, thus affording illustration of the fact that the vendee's credit is not augmented. These touch the vendee as well as third parties.

The nature of the transaction, the harshness of the consequences, might not unlikely encourage perjury. To suppress this evil alone would afford a reason for the legislature to provide that even as between the parties this kind of contract must be in writing in order to be valid. Such has been said to be the reason for the enactment of the Statute of Frauds. An important element of a writing is to evidence the terms and conditions of the contract to which both parties must accede before the bargain is consummated. In other words, to show that the minds of the parties have met. This concern of the legislature of 1923 is nicely shown in Sec. 1 of the Act (§ 21-301). In the case of a mortgage or a deed it is ordinarily necessary that only the mortgagor or grantor sign the instrument. In many statutes of other states respecting acknowledgment of conditional sales contracts, the requirement is that only the vendee must acknowledge. We think that Sec. 1 manifests a solicitude that in contracts

"that are intended to hold the title to personal property in the former owner, possessor or grantor," the legislature desired that such a far reaching intention should not be established merely by oral testimony depicting the recollection of the parties as to the nature of the transaction, so they provided that there must be written evidence that the minds of the parties had met. This is supported by the unusual provision that such "instruments in writing * * * shall be acknowledged by the seller and purchaser." As we have said, the case at bar illustrates the wisdom of the requirement of a written instrument.

It is not necessary that the legislature shall have said that contracts not in writing shall not be valid and enforceable if such intention is fairly implied. In Lewis v. Herrera, 10 Ariz. 74, 85 P. 245, 246, the court was construing the statutes which provided: "Every deed of conveyance of real estate must be signed by the grantor, and must be duly acknowledged before some officer authorized to take acknowledgments, and properly certified to by him for registration."

The court said: "When it says that every deed and conveyance of real estate must be signed by the grantor and must be duly acknowledged before some officer authorized to take acknowledgments and properly certified to by him for registration, it is equivalent to saying that no deed, unless executed as therein provided will operate to effect a conveyance of real estate."

This decision was affirmed by the United States Supreme Court, 208 U.S. 309, 28 S.Ct. 412, 414, 52 L.Ed. 506, where the court per Fuller, C. J., said that the statute: "made the acknowledgment by the grantor before a proper officer a prerequisite to the validity of the deed as much as the signing."

It has been decided that when a statute requires certain formal requisites for the execution of a contract that these requirements may affect the validity of the contract and are not necessarily designed as a mere prerequisite entitling such contracts to public record. Forrester v. Reliable Transfer Co., 59 Wash. 86, 109 P. 312, Ann. Cas.1912A, 1093. In Ohio it has been held that an acknowledgment is essential to the passing of title to real estate and this seems to be independent of the necessity of an acknowledgment as a prerequisite entitling the conveyance to record. See 1 C. J., Acknowledgments, Sec. 5, Note 26.

What we have said about acknowledgments and in the citation of authorities with reference to the same is to be taken merely as illustrative of the idea that any requirement of a statute with reference to the observance of formal requisites as to the execution of a contract may affect the validity of the contract as well as being a prerequisite entitling it to public record.

Our conclusion is strengthened by the provisions of Art. 21, c. 35, N.M.S.A. 1929. This article is an act approved March 11, 1929 (Laws 1929, Chap. 46), being an "Act to Define the Crime of Un-

lawfully Selling or Otherwise Disposing of Personal Property Held Under a Conditional Sales Contract and Fixing the Penalties Therefor."

Section 2 of the Act (Sec. 35-2102, N.M.S.A.) makes it a felony for any person who having obtained possession of any personal property from the owner or possessor thereof, under a conditional sales contract, and who prior to the vesting of the title in him pursuant to such conditional sales contract, shall sell, transfer, encumber, conceal, take, drive or carry away, or in any manner dispose of such property contrary to the provisions of such conditional sales contract, and without the written consent of the owner under such conditional sales contract. Under Section 3, such conduct is made a misdemeanor if the property be of less value than $100. Section 1 (§ 35-2101, N.M.S.A.) defines the term "conditional sales contract" as follows: "The term 'conditional sales contract' as used in this act shall be construed to mean and include all contracts, leases, purchase leases, sale leases, or other instruments of writing which are intended to hold the title to personal property in the former owner, possessor or grantor. (L. '29, Ch. 46, § 1)."

This evinces a legislative understanding that conditional sales contracts are written instruments and that oral conditional sales contracts are not recognized under our laws.

It is apparent that it is just as great a wrong for a person who having obtained possession of personal property from the owner thereof under an oral conditional sales contract and prior to the vesting of title in him pursuant to such oral conditional sales contract to sell, transfer, encumber, conceal, take, or drive or carry away or dispose of such property contrary to the provisions of such oral conditional sales contract without the consent of the owner under such verbal conditional sales contract.

It seems unlikely that it was the intention of the legislature to let go unpunished such an offender and provide only for the prosecution and punishment of one who sells, disposes of, etc., property he does not own, but is in his possession under a written conditional sales contract.

A more plausible explanation is that it was the legislative understanding from its previous enactments that conditional sales contracts can exist only if in writing and hence in the 1929 Penal enactment considered the ban there placed upon infringement thereof as embracing all offenders.

From all the foregoing, it appears that the judgment must be reversed and the cause remanded, and it is so ordered.

BRICE, ZINN, and MABRY, JJ., concur.

SADLER, Justice (dissenting).

The majority opinion contains arguments which no doubt would make a strong appeal before a session of the legislature considering a bill to prohibit oral conditional

sales contracts. The legislature, however, not this court, is the body to say whether they shall be proscribed. And it has never yet said so by any express declaration. Even in the face of an obvious admonition of the territorial supreme court to oncoming legislatures in Redewill v. Gillen, 4 N.M. 72, 12 P. 872, to denounce all conditional sales agreements, the session laws covering a span of fifty-three years may be searched in vain for any express language prohibiting them, either oral or written.

Hence, the majority devote the greater part of their opinion to reasoning that the legislatures enacting L.1917, c. 74 and L. 1923, c. 8, must have intended to prohibit such contracts where oral and that the legislature enacting the criminal statute (L. 1929, c. 46) against wrongful disposal of property held under conditional sales contracts must have thought the earlier legislatures had done so. The latter assumption brings little aid to the majority view for after all the controlling consideration is whether an intent to repeal the common law is to be deduced from the acts relied upon as accomplishing such repeal.

The majority agree that a verbal conditional sales contract was valid at common law. This concession is fatal to their conclusion. For, "* * * it is well settled that where a statute does not specifically repeal or cover the whole ground occupied by the common law, it repeals it only when, and so far as, directly and *irreconcilably* opposed in terms." (Italics mine.) Ex Parte DeVore, 18 N.M. 246,

136 P. 47, 51. I find no irreconcilable conflict here, nor does the statute purport to deal with anything but notice.

I see in the legislation relied upon nothing more than "notice" statutes in the interest of third parties. If they mean what the majority say they do, the legislature wasted many words and phrases. Instead of declaring a failure to observe the statute would render void the contracts designated as to a long list of enumerated persons, the legislature in a very few words could have proscribed oral contracts altogether. This it has never yet done expressly, as the majority agree, nor as I consider, by implication. It is not our proper function to declare policy and we invade the legislative field when we do so.

L.1909, c. 30, § 1 (1929 Comp. § 48-125), denying an exemption from execution to the purchaser of chattels for unpaid purchase price, while title remains in the original purchaser, in effect recognizes a vendor's lien in favor of the seller, good as between him and the purchaser. This law is still in effect. The legislature apparently thus far has felt if it afforded ample protection to third parties, as it has done by the notice statutes in 'question, there was no good reason to deny to the parties themselves the right to contract orally for a reservation of title to chattels. But its reasons for not prohibiting such contracts are unimportant. If sufficient unto the legislature, our inquiry should end.

I dissent.