### AMERICAN EAGLE FIRE INS. CO. OF NEW YORK v. PEOPLES COMPRESS CO. et al.

### No. 3169.

Circuit Court of Appeals, Tenth Circuit.

July 10, 1946.

H. L. Smith, of Tulsa, Okl., and C. M. Smithdeal, of Dallas, Tex., for appellant.

Brown Moore, of Stillwater, Okl., for appellees, Peoples Compress Company and J. H. Bellis Cotton Company.

Before, PHILLIPS and MURRAH, Circuit Judges, and KENNAMER, District Judge.

MURRAH, Circuit Judge.

This appeal involves coverage under a "blanket or floating" insurance policy issued by American Eagle Fire Insurance Company insuring the People's Compress Company against any loss or damage by fire to cotton stored in its warehouse, for which "insured receipts" had been issued. The premium for such policy was adjusted and paid each month on the basis of the number of insured compress receipts issued and outstanding, and the policy required the insured to make weekly reports to the insurer showing the total number of bales of cotton for which receipts were outstanding.

On or about June 28, 1943, a fire destroyed the People's Compress and either destroyed or damaged most of the cotton stored therein. The Compress Company filed a proof of loss showing the number of bales of cotton in the warehouse at the time of the fire and made claim on the insurer for payment of 1302 bales, on which insured warehouse receipts were outstanding. When the insurance company denied liability under the policy, the holders of outstanding warehouse receipts brought this suit in the state court against the Compress Company, as warehouseman, the Insurance Company, as insurer, and the Bellis Cotton Company, as pledgor of the receipts, to recover the value of cotton alleged to have been destroyed by the fire. The Insurance Company, as the only non-resident defend-

ant, duly removed the case to Federal court on the grounds of diversity of citizenship and requisite amount in controversy, both of which are shown on the record.

The issues as finally cast at the time of trial aligned the Pawnee National Bank, as the holder of outstanding warehouse receipts, against the Bellis Cotton Company, as pledgor, the Compress Company, as warehouseman, and the Insurance Company, as insurer; the Compress Company cross-claimed against the Insurance Company as its insurer; the Bellis Company cross-claimed against the Compress Company, its bailee, and the Insurance Company. The Insurance Company, as insurer and subrogee of some of the original plaintiffs, defended and cross-claimed on the grounds that when its policy was issued the Compress Company and the Bellis Company, both of which were owned and controlled by the same stockholders, had entered into a "secret agreement" whereby Bellis was permitted to withdraw and ship cotton from the Compress without first surrendering the insured warehouse receipts issued thereon; that such arrangement was a violation of the laws of the United States and the State of Oklahoma pertaining to public warehouses; that the insurer would not have issued its policy had it known of such unlawful agreement, and that the concealment of this material fact prevented the policy of insurance from becoming a valid contract. Alternatively, it is averred that if the policy ever became a valid contract, it was voided by the failure of the insured to make and preserve adequate weekly reports, as required by the policy, from which the insurer could determine the amount of cotton in the compress, for which insured receipts were outstanding. That in any event, the insurer is not liable to Bellis as the holder of insured warehouse receipts because the alleged collusive and fraudulent practices under the so-called "secret agreement" vitiated the contract between the insured and insurer, and Bellis as the collusive holder of warehouse receipts.

The trial court found that the policy of insurance was in full force and effect at the time of the fire; that the Compress Company had done everything reasonably required of it by the terms of the policy,

and that through no fault of it the fire had totally destroyed 1,096 bales of cotton represented by outstanding insured warehouse receipts; and, that the allegations of fraud, collusion, failure to keep proper records and give required information to the Insurance Company was unsupported by the evidence. It accordingly gave a general judgment against the Insurance Company in favor of the Compress Company, and a judgment in favor of the respective holders of outstanding warehouse receipts against the Compress Company for the value of the cotton represented by the receipts.

The Insurance Company appeals only from the judgments in favor of the Compress Company and the Bellis Company. Eleven specifications of error are assigned, but in sum they present the same contentions urged to the trial court. The question presented here is whether the trial court's findings are reasonably supported by the evidence; and whether the court applied the correct legal standards in the construction and interpretation of the insurance contract.

The trial court's findings and judgment are based upon the following facts, fairly established by the evidence. Mr. Forrest Hazaleus, who had been with the Compress Company for thirty-one years, was the manager when the fire occurred. The Bellis Company was operated by Price King, President, and Maude Groom, Vice-President. The heirs of J. H. Bellis owned stock in both the Compress Company and the Bellis Company, and Maude Groom was the dominating personality in both companies. The Bellis Company owned several gins throughout Oklahoma and for many years had stored its cotton in the compress. At the beginning of each cotton season Bellis would by letter agree to indemnify the Compress Company against any loss whatsoever it might sustain in shipping cotton belonging to Bellis without the surrender of warehouse receipts which had been issued thereon.

The policy by its terms is void and inoperative if the insured conceals or misrepresents in writing or otherwise, any material fact or circumstance concerning the insurance or subject matter thereof. To emphasize the vice of the alleged "secret agreement", the appellant points to the laws of Oklahoma relating to cotton and broomcorn warehouses, which make it a criminal offense for such public warehouses, under any circumstances or upon any order or guaranty whatsoever, to deliver the property for which receipts have been issued until the receipts have been surrendered and cancelled. Failure to strictly comply with the provisions of the law renders the warehouseman liable to the legal holder of the receipts for the full value of the property represented thereby, and for other penalties provided. 81 O.S.A. § 145, 150. Attention is also called to the Oklahoma Statutes making it a criminal offense for a manager or other employee of a warehouse operated under the state warehouse system (see 81 O.S.A. § 171, 172) to issue or aid in issuing a receipt for any agricultural product without knowing that such product has actually been placed in the warehouse and under control of the manager, or to deliver any agricultural product from the warehouse without the surrender for cancellation of the receipt therefor. 81 O.S.A. § 180, 181. See also 81 O.S.A. § 375. The Federal law also imposes upon a licensed warehouseman the duty to cancel each receipt returned to him upon the delivery by him of the agricultural product for which the receipt was issued. 7 U.S.C.A. § 263.

Not all compresses or warehouses engaged in the business of storing cotton are public warehouses within the meaning of the state and Federal law. See Traders Compress Co. v. Precure, 107 Okl. 191, 231 P. 516. But, it may be conceded without deciding that the Compress Company was subject to both the state and Federal law, and that the practices under the so called "secret agreement" violated both the state and Federal law, and subjected the Compress Company to the penalties imposed for such violations. Still such violations do not of themselves preclude an insurance contract for the benefit of the holders of the receipts which the public warehouseman is required by law to carry. See 81 O.S.A. § 148. The law invoked by the insurer is for the benefit of

the holders of warehouse receipts—not the insurance company. It is not enough for the insurer to show that the warehouseman violated some duty imposed by statute, he must go further and show that the violations affected the risk assumed under the insurance contract. But, the insurer contends that the arrangement between the Compress Company and Bellis Company was material to the risk assumed, and offered to show that had it known of such agreement it would not have issued the policy or renewed the same.

██ It is the general rule that an insured conceals a material fact when he designedly and intentionally withholds a fact material to the risk, which honesty, good faith, and fair dealings require him to communicate to his insurer. See Couch on Insurance, § 776. But, in the absence of fraud, failure of the insured to disclose a fact with reference to which no questions are asked, is not such a concealment which will avoid a policy. C. I. T. Corporation v. American Central Insurance Company, 18 Cal.App.2d 673, 64 P.2d 742; Continental Insurance Company v. Ford, 140 Ky. 406, 131 S.W. 189; Niagara Fire Insurance Company v. Layne, 170 Ky. 339, 185 S.W. 1136; Ellis v. Standard Accident Insurance Company of Detroit, Mich., D.C., 27 F.2d 544; Business Men's Assurance Company of America v. Campbell, 8 Cir., 32 F.2d 995; Wharton v. Aetna Life Insurance Company, 8 Cir., 48 F.2d 37; Connecticut Fire Ins. Co. v. Colorado Leasing, Mining & Milling Company, 50 Colo. 424, 116 P. 154, Ann.Cas.1912C, 597; Couch on Insurance, § 776.

██ There is no evidence tending to show that the insurer made any inquiry regarding the practice under the agreement when the contract of insurance was issued, nor is there any evidence tending to show that the agreement and practice was fraudulently or intentionally concealed by the insured. As manager of the compress, Mr. Hazaleus testified that the practice contemplated by the agreement was a customary procedure due to the fact that many times the warehouse receipts were deposited with a bank, or for some other reason could not be obtained on the date the shipping orders were issued. The insurer does not claim that the practice enhanced the risk assumed, or changed the premium to be charged. Furthermore, whether the insurer would have issued the policy with knowledge of the agreement between the Compress Company and Bellis Company is not a question for the determination of the insurer after the loss has occurred— it is a judicial question to be judicially determined under all the facts and circumstances. Cf. Volunteer State Life Insurance Company v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270. See also Vol. 29 Am.Jur. § 525. We agree with the trial court that the agreement and the practices thereunder did not avoid the policy.

The insurance policy contained a promissory warranty to the effect that the insured would report to the company not later than Monday of each week the total number of bales of cotton for which receipts had been issued each day in the preceding week, and the number of receipts surrendered and cancelled each day. The insurer contends that this provision in the policy was breached by the making of monthly reports, and further that the records kept by the insured were not adequate to determine the number of receipts outstanding when the fire occurred.

The evidence shows that the insured did not make weekly reports in accordance with the policy provisions, but did make monthly reports reflecting the number of bales of cotton in the compress on each day during the period covered by such report. For the purpose of keeping records on the incoming and outgoing cotton, Mr. Hazaleus kept a "weight sheet" on each bale. On this sheet was the date the cotton entered the warehouse, its location, the number of the warehouse receipt issued thereon, and when the cotton was shipped from the Compress the number of the shipping order was noted thereon. There was no way to determine from the "weight sheet" whether the cotton was shipped by rail or truck, but the Compress Company kept the shipping orders for cotton going

out by rail and made "similar abstractor shipping orders" for their files of the cotton going out by truck. All of these records were usually kept in a safe in the office of the company, but on the date of the fire Mr. Hazaleus had removed all the records, except the "weight sheets" from the safe for the purpose of working on his books, and they were all destroyed, leaving only the "weight sheets" from which it could be determined how many bales of cotton were in the warehouse at the time of the fire. From these "weight sheets" a proof of loss was filed making claim for payment of 1,302 bales of cotton against which receipts were outstanding.

Approximately four months after the fire, an auditor checking the Bellis' books found that on the date following the fire Maude Groom, Vice President of Bellis Company, had deposited 367 of Bellis Company's warehouse receipts with the Chickasha Cotton Oil Company as security for an indebtedness; that 208 of the receipts covered cotton which was not in the compress when the fire occurred, but had been sold and shipped to Inman and Company of Charlotte, North Carolina. The Compress Company was notified of this discovery and the proof of loss which had been filed with the insurer was amended to exclude these 208 bales of cotton. Bellis Company settled its indebtedness with the Chickasha Cotton Oil Company and all 367 receipts were returned to it, and the 208 bales of cotton sold to Inman and Company are not claimed as part of the loss.

It is argued that if adequate records, as required by the policy, had been kept the shipment of the 208 bales of cotton to Inman and Company would have been reflected in the records. It is true that the "weight sheets", which were all the records saved from the fire did not reflect that the 208 bales of Bellis cotton had been shipped, but Mr. Hazaleus testified that the shipping orders which would have ordinarily reflected the outgoing cotton had been destroyed in the fire; that the 208 bales of cotton had been shipped while he was temporarily absent from the office, and that for some unaccountable reason the shipment had not been entered upon the

"weight sheets" from which the proof of loss was made. He testified that the "weight sheets" were the warehouseman's "bible", and that from this record a warehouseman could reliably ascertain the number of bales of cotton in storage.

The trial court found from the evidence that the Insurance Company was advised of the character of the records kept by the insured at all times during the life of the policy and that it waived the technical requirements for weekly reports by authorizing monthly reports in lieu thereof.

The law does not require the insured to keep and produce the best possible records. It is sufficient if the insured keeps and produces a record from which the amount and value of the insured cotton destroyed can be "reasonably ascertained". Royal Ins. Company v. Scritchfield, 51 Okl. 523, 152 P. 97; Mississippi Fire Ins. Co. v. Perdue, 217 Ala. 292, 116 So. 142, 62 A.L.R. 626. We agree with the trial court that the proof offered in support of the loss was a substantial compliance with the policy.

Finally, the appellant points to the fact that the Compress Company permitted Bellis Company to ship 208 bales of cotton from the warehouse without canceling the outstanding receipts therefor; the pledge of these receipts by Bellis Company and the failure of the records of the Compress Company to reflect the shipment of the cotton to Inman and Company as conclusive evidence of fraud and collusion between the Compress Company and Bellis Company. These facts, it is argued, preclude the Bellis Company from recovery on its outstanding receipts and the Compress Company from recovering under the policy.

The evidence of Mr. Hazaleus is to the effect that the cotton was shipped during his temporary absence from the office and that through an oversight the shipment was not entered upon the "weight sheet", but that when the auditor checking the books and records of the Bellis Company located the discrepancy he immediately called it to the attention of the Compress Company and the proof of loss was amended accord-

ingly. From this and other competent evidence the trial court ruled that there was no fraud or collusion between the two companies, and we are unable to say that his conclusions are clearly erroneous.

The judgment is affirmed.