285 P.2d 140

C. H. FULWILER, d/b/a Fulwiler Motor Finance Company, Plaintiff-Appellee,

v.

TRADERS & GENERAL INSURANCE COMPANY, Defendant-Appellant,

Allen A. Cooper and Dick Turk, Defendants-Appellees.

No. 5906.

Supreme Court of New Mexico.

May 6, 1955.

Rehearing Denied June 15, 1955.

Quincy D. Adams, James H. Foley, Albuquerque, for appellant.

Philip H. Dunleavy, Albuquerque, for C. H. Fulwiler, appellee.

McGHEE, Justice.

The question presented upon this appeal relates to the right of one as assignee or vendor's interest under a contract for the conditional sale of an automobile to proceed against an insurance company upon its policy of automobile insurance covering loss by collision or upset and naming the

conditional vendee as insured with the provision loss was payable to such assignee and the insured vendee as their interests appeared, where the automobile insured was upset and extensively damaged while in the possession of the assignee after repossession for default of the conditional vendee in making stipulated payments.

Judgment below was for the plaintiff, assignee of the conditional vendor, against the defendant insurance company, which brings this appeal.

On May 8, 1952, the defendant issued an automobile insurance policy to one Turk, of Gallup, New Mexico, insuring the automobile in question for its actual cash value, less $50 deductible, coverage to extend for one year from said date. Under the policy Turk was originally named as the insured and the First State Bank of Gallup was designated as loss-payee.

In September of 1952, Turk sold the automobile to Allen Cooper of Grants, New Mexico. This sale was financed by the plaintiff. Turk assigned his contract to the plaintiff and received from him the sum of $700. There was a balance owing to Turk of $133 which the plaintiff agreed to remit when the conditional vendee, Cooper, had made sufficient payments on his indebtedness to the plaintiff to bring the amount remaining due down to the loan value of the automobile. Upon the assignment of the contract, Turk guaranteed the payment of Cooper's indebtedness to the plaintiff.

The conditional sale contract reserved title in the seller until the full amount of indebtedness was discharged, provided that no loss, injury or destruction of the property should release the purchaser from his obligation and made further provision for repossession by the seller upon default of the buyer. It was agreed the seller might take possession upon such event, either directly or through a sheriff or other legal officer, retain all payments theretofore made and re-sell the property at public or private sale, with or without notice to the buyer and with the right in the seller to bid upon the property at public sale. The seller was empowered to deduct all expenses of repossession and sale and then apply the balance of proceeds from such sale to the amount due on the contract. Any surplus remaining was to be paid to the buyer and the buyer was liable for any deficiency.

About a month after the above described negotiation, the following general change endorsement was attached to the policy of insurance on the car by the Clay Fultz Agency of Gallup, New Mexico, agent of the defendant:

"Notice is hereby given that the name of insured should now read:

"Allen Cooper

"% Your Food Store, Grants, New Mexico

"Notice is also given that there is now a loss payable in favor of Fulwiler Motor Finance Company, Albuquerque, New Mexico, in the amount of $1065.60, payable in 18 payments of $59.20. The loss payable in favor of the First State Bank is eliminated.

"All other terms and conditions remain unchanged."

While matters thus stood, the conditional buyer, Cooper, defaulted in his payments under the contract, whereupon the plaintiff either called or wrote Turk advising him of the default and asking that he repossess the automobile, which he did. According to Turk's testimony Cooper willingly surrendered the automobile to him and Turk, who was a used car salesman, took it with the intention of doing what he could with it—either to re-sell it, pay it out, or turn it over to the plaintiff. He also testified that at the time repossession was made, it was done upon the assumption that Cooper was to suffer no further liability on the contract and was correspondingly to retain no claim against anyone for any surplus remaining from proceeds on re-sale after satisfaction of the debt due. There was, however, no showing that Turk had any authority whatsoever to release Cooper from his contract with the plaintiff, or that Cooper directly waived or surrendered any right he might have in the proceeds upon re-sale.

Turk held the car for a month or six weeks when he was advised by the plaintiff that a man was being sent to Gallup to take possession of the car and drive it to the plaintiff's office in Albuquerque. Accordingly, on April 15, 1953, an employee of the plaintiff named Apodaca arrived in Gallup to take the car. One of the office employees of plaintiff testified it was intended the car would be placed on plaintiff's lot and advertised for re-sale. Before turning the automobile over to Apodaca, Turk asked for a complete release from the plaintiff. Turk's attorney prepared such a release which was executed for the plaintiff by Apodaca. The evidence was conflicting as to whether or not Apodaca had any authority to execute such release. Apodaca then took the car and while being driven from Gallup to Albuquerque it overturned and was so badly damaged it had only a salvage value of $200.

The plaintiff then brought this action asking judgment against the insurance company as loss payee on the described policy of insurance. Turk and Cooper were named as defendants. The insurance company defended upon the ground the plaintiff was not insured against loss under the policy in question and that neither Turk nor Cooper had an insurable interest in the automobile at the time of loss.

The case was tried to the court which found that Apodaca had no authority to

release the rights of the plaintiff in either the automobile or the conditional sale contract; that the value of the automobile just preceding the accident was $1,095; that the net loss, after deducting the salvage value of $200 and $50 for the deduction provisions of the policy, was $845. It concluded the plaintiff was a named insured under the insurance policy and that he had an insurable interest in the automobile on the date of the accident to the extent of the balance due on the contract and his expenses on repossession; that Turk was entitled to payment of $133 and that Cooper had an equity in the car of $45.38. Judgment was then entered for such parties in the respective sums mentioned against the defendant insurance company.

Numerous assigned errors are directed to the court's refusal to grant requested findings of fact and conclusions of law tendered by the defendant, the findings of the court respecting the value of the automobile before the accident, the lack of authority in Apodaca to execute the release given to Turk, the conclusion the plaintiff was a named insured under the policy and the granting of judgment in favor of Turk and Cooper against the defendant.

Neither Turk nor Cooper makes appearance in this court.

We will first consider defendant's principal argument which may be paraphrased as follows: The plaintiff was not a named insured under the insurance policy, but merely an appointee to receive the proceeds of the policy as his interest might appear. As such appointee his right of recovery is dependent upon the named insured having an insurable interest in the property at the time of loss. Plaintiff is not entitled to recover on the policy because neither the named insured, Cooper, nor the original insured, Turk, had an insurable interest in the car at the time of loss.

Our attention is directed by defendant to the difference between a loss-payable or open mortgage clause in an insurance policy, and a union or standard mortgage clause. In substance, the distinction is that under a loss-payable clause no contract of insurance is made between the insurer and the loss-payee and the right of recovery of the loss-payee cannot rise above that of the named insured, so that a breach of the conditions of the policy by the insured which precludes his recovery likewise defeats the recovery of his appointee, the loss-payee. 29 Am.Jur. (Insurance) § 552. Whereas, under a union or standard mortgage clause it is usually provided the interest of the mortgagee in the proceeds of the policy shall not be defeated by the act or neglect of the mortgagor or owner of the insured property. 29 Am.Jur. (Insurance) § 553.

A loss-payable clause was before the court in Tri-State Ins. Co. v. Ford, D.C. N.M.1954, 120 F.Supp. 118, 123, where it was said:

"The phrase 'payable as interest may appear' identifies this provision as a standard 'loss-payable clause'; as such it is well settled that the rights of a mortgagee under such a loss-payable clause rise no higher than the rights of the insured."

At footnote 11, p. 123 of the report of this case, the following matter is quoted from Hamburg-Bremen Fire Ins. Co. v. Ruddell, 1904, 37 Tex.Civ.App. 30, 82 S.W. 826:

"'* * * The contract proper is between the insurance company and the owner of the property, and the effect of the clause directing that the loss, if any, shall be payable to the mortgagee, is but to name or appoint that person as the party entitled to receive payment of the fund in the event a loss becomes payable under the terms of the policy. But whether or not any loss is payable at all is dependent entirely upon the performance of the terms of the contract between the insurer and the insured. The policy in this instance expressly stipulated that the same should be void in case of any fraud upon the part of the insured; and, if it did not, a sound public policy would not permit him to recover by his own criminal act, and, since the appellee must claim whatever rights he has through and by virtue of the mortgagor's contract, his claim also falls to the ground. (Citing cases.)'"

It is no longer disputed by the plaintiff that what is involved here is a loss-payable clause, and he does not contend, as he did in the lower court, that he is a named insured under the policy. His argument in support of judgment is, however, that the named insured, Cooper, violated no conditions of the policy, and, specifically, that Cooper retained an insurable interest in the automobile at the time of loss.

We must agree with the plaintiff. By the terms of the conditional sale contract it was provided: "No transfer, renewal, extension or assignment of this contract or any interest thereunder, *or loss, injury or destruction of said property shall release purchaser from his obligation hereunder*". (Emphasis supplied.)

There is absolutely no indication in the record that Turk was empowered by the plaintiff to release Cooper from his liability under the contract. The most Turk was authorized to do was to repossess the automobile from Cooper. We think there could not well be any dispute that under the contract Cooper bore the risk of loss of destruction or damage to the property. It was neither contended nor litigated below that the injury to the property was the result of either negligence or willfulness on the part of plaintiff's employee who drove the car. As these matters are never presumed, we believe the plaintiff had a clear right to proceed against Cooper for the loss sustained. Hollenberg Music Co. v.

Barron, 1911, 100 Ark. 403, 140 S.W. 582, 36 L.R.A.,N.S., 594; 3 Jones, Chattel Mortgages and Conditional Sales (Bowers Ed., 1933) § 1176, and authorities cited therein.

■ An insurable interest has been generally defined in the case of Harrison v. Fortlage, 1896, 161 U.S. 57, 16 S.Ct. 488, 490, 40 L.Ed 616, as follows:

"* * * It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself. * * *"

■ We think it is not open to controversy that a conditional vendee, as such, has an insurable interest in the property contracted to be sold, but it is defendant's contention that the repossession of the property by the plaintiff terminated any interest which the conditional vendee had in it. We are referred to the case of C. I. T. Corp. v. American Central Ins. Co., 1937, 18 Cal.App.2d 673, 64 P.2d 742, 745, as authority for this proposition. There the plaintiff took an assignment of a conditional sale contract from a truck company which had sold a truck to one Housley under the contract. As a down payment Housley turned in a used truck at an agreed valuation of $1,350 and received credit for that amount. Shortly after the contract was entered into, the used truck was replevied from the truck company and it developed Housley had no title to the truck. Immediately thereafter the truck company repossessed from Housley the truck they had sold him. It was placed upon the truck company's lot and was stolen therefrom. The court there upheld the contention of the insurance company that the policy of insurance on which the truck company was loss-payee was avoided by termination of Housley's interest in the truck and by the change of the truck company's interest. It was said:

"The repossession by the plaintiff of the Federal truck terminated the interest of Housley, the vendee, which created a breach of the warranty of title above set out; and it also changed the nature of the interest of the plaintiff, since by termination of the conditional sale contract the relation of lessor and lessee was extinguished and the plaintiff resumed full ownership of the property. Its interest was also changed by the fact that under the express provisions of the contract the risk of loss was borne by the lessee or vendee, but this risk was reassumed by the plaintiff through termination of the contract by repossession."

Without expressing any conclusion as to the correctness of this opinion, the case is clearly distinguishable from the present

one upon its facts. In the California case the act of repossession completely terminated both any equity, and, apparently, any liability of the buyer in the property and the contract. In other words, there was an absolute rescission of the contract. That is not the case here.

The same may be said of the case of Tri-State Ins. Co. v. Ford, supra, where a mortgagor obtained an insurance policy by fraudulent misrepresentation that no automobile insurance policies issued to him had been cancelled in the year preceding application for insurance, and the loss-payee, the mortgagee, was chargeable with notice of prior · cancellations of policies within such period.

In the present case the parties have done no more than follow the customary procedure obtaining in conditional sale transactions upon default of the buyer in making deferred payments—a procedure expressly outlined in the contract. The repossession of the property did not constitute a rescission of the contract and the interest of the buyer in the property, both as to any equity he might have and the risk of loss continued in effect under the contract. Under such circumstances, repossession by the loss-payee does not avoid insurance coverage. See Fageol Truck & Coach Co. v. Pacific Indemnity Co., 1941, 18 Cal.2d 731, 117 P.2d 661; Kleiber Motor Truck Co. v. International Indemnity Co., 1930, 106 Cal.App. 709, 289 P. 865;

Brown v. Northwestern Mutual Fire Ass'n, 1934, 176 Wash. 693, 30 P.2d 640; Howell v. Globe & Rutgers Fire Ins. Co., 1928, 133 Misc. 193, 231 N.Y.S. 67.

The testimony of Turk at the time of trial to the effect that neither he nor Cooper presently claimed any equity in the automobile cannot operate to defeat the rights of the plaintiff, as the interests of these persons must be determined by the facts at the time of loss. Commercial Credit Co. v. Eisenhour, 1925, 28 Ariz. 112, 236 P. 126, 41 A.L.R. 1274.

Under the disposition made of this point it is unnecessary to determine whether the finding of the lower court that Apodaca had no authority to release Turk from his liability should stand.

It is further contended by the defendant that the conditional sale contract was void because unacknowledged and, therefore, that Cooper had no insurable interest in the vehicle. Reliance is placed upon our decision in Allison ·v. Niehaus, 1940, 44 N.M. 342, 102 P.2d 659.

There is some discrepancy in the record as to whether the original contract of sale was introduced in evidence. Apparently counsel for plaintiff inadvertently referred to a copy of the contract as an original. In any event, the contract before the court did not bear evidence it had been acknowledged. The witness Keith, an employee of the plaintiff, asserted the origi-

nal contract was filed in Santa Fe and that it must have been acknowledged because the plaintiff did not receive it back, but did receive a title to the car in due course which showed Cooper as the owner, with a lien on the title for the amount of contract indebtedness.

The question of validity of the contract was not brought out until after the parties had rested. The lower court offered to re-open the case in order that counsel for defendant might have opportunity to examine the contract and see whether it was acknowledged. Counsel did not choose to move for the re-opening of the case.

Section 64–5–1, N.M.S.A., 1953 Comp., regarding the filing of liens and encumbrances with the motor vehicle division, provides:

"(a) No conditional sale contract, conditional lease, chattel mortgage, or other lien or encumbrance or title retention instrument upon a vehicle of a type required to be registered hereunder, other than a lien dependent upon possession, is valid as against the creditors of an owner acquiring a lien by levy or attachment or against subsequent purchasers or encumbrances (encumbrancers) without notice until the requirements of this article * * have been complied with.

"(b) There shall be deposited with the division the original or a copy of the instrument creating and evidencing the lien or encumbrance *which instrument shall be executed in the manner required by the laws of this state.* When a copy of the instrument is filed there shall be attached to or endorsed upon the instrument a certificate of a notary public stating that the same is a true and correct copy of the original. * * *" (Emphasis supplied.)

In view of the record on this point and the presumption that public officers have properly discharged the duties of their office, we cannot say it was error for the trial court to refuse to rule the conditional sale contract had not been properly acknowledged. Herrera v. Zia Land Co., 1947, 51 N.M. 390, 185 P.2d 975; Abreu v. State Tax Commission, 1924, 29 N.M. 554, 224 P. 479; Atchison, T. & S. F. Ry. Co. v. Elephant Butte Irr. Dist. of New Mexico, 10 Cir., 1940, 110 F.2d 767.

Point is made by defendant that its liability to plaintiff is avoided because the automobile insured was subject to a conditional sale contract not described in the policy, under a clause therein providing the policy would not apply to certain coverages, including collision and upset, under such circumstance.

This argument is without merit in view of the general change endorsement made by defendant's agent. As seen above, this endorsement recited the total amount of loss payable to the plaintiff and the

amount of individual payments to be made thereon by the insured. By acceding to this endorsement, the defendant has waived its right to rely upon the provision of the policy asserted.

The rule is stated in Annotation, 65 A.L.R. 913, as follows:

"Since it is the usually accepted rule, where an insurer, at the time of the issuance of a policy, has knowledge of existing facts which, if properly availed of, would invalidate the contract from its very inception, that the unqualified delivery of the policy constitutes a waiver of such known grounds of forfeiture * * * it would appear generally acceptable that the delivery of a policy which clearly indicates upon its face a ground of forfeiture would constitute a waiver of forfeiture upon that ground. Accordingly, although some of the cases within the present annotation speak of waiver, others of estoppel, and still others of breach of the terms of the policy * * * the result, in principle * * * is that if the outstanding interest in the subject of insurance claimed to defeat recovery was at the inception of the contract fairly indicated by a loss-payable clause, the existence of such interest is not a valid defense."

The reason underlying this rule is compellingly stated in the report of case immediately preceding the above annotation, Firemen's Ins. Co. v. Brooks, 6 Cir., 1929, 32 F.2d 451, 452, 65 A.L.R. 909:

"* * * The undisputed facts are that (under the legal theory which we assume) the insured owned the equity of redemption and thus had an insurable interest; that Trimby held the legal title under a conveyance which recited that it was given as security for a debt, and which, among other things, obligated the grantor to insure the buildings and to assign the insurance policy to Trimby as additional security for the debt; that, though Trimby held the legal title, he held it in trust for the insured, and his only beneficial or equitable interest was to the extent of his unpaid debt; and that the company consented that the proceeds in case of loss should be paid to Trimby 'as interest may appear.' Can the insurer then be heard to say that, because Trimby's interest turned out to be a temporary holding of the legal title, instead of any other kind of interest which he might have had in the property or proceeds, therefore it will not pay the loss to him or to any one else? It seems to us entirely plain that if the loss had been payable to Trimby 'to the extent of his interest under a security deed,' the necessary consent or agreement of the company must be inferred; and, if so, we see no reason why this

recognition of Trimby's interest, whatever it may be, is not equally effective. We do not overlook the argument urged upon us that the 'loss payable' clause is only an agreement to pay to Trimby what would otherwise have been payable to the insured, and that if, by reason of conditions in the policy, it was invalid in favor of the insured, it cannot be valid in favor of Trimby. This argument is convincing enough in the typical case, where the appointee is claiming rights which the insured never acquired, but it begs the question as applied to this case; for the question here is whether the company did not, as of the date of the policy, agree that the outstanding interest of Trimby should not affect the validity of the policy, if and when a claim arose in favor of the insured; and, if it did, then Trimby may well continue as to the proceeds the mere appointee of the insured, and neither has nor needs better right than they have. * * *"

Under the rule of Miller v. Phoenix Assur. Co., Limited, of London, 1948, 52 N.M. 68, 191 P.2d 993, we believe the insured's disclosure of the interest of the loss-payee was sufficiently definite to put the insurer on inquiry, and the point is ruled against defendant.

Complaint is made by the defendant that the value of the automobile before accident, as found by the trial court, was not sufficiently established by the evidence. The trial court found the value to be $1,095, as shown by the Blue Book of the National Association of Automobile Dealers. After deducting $50 under the provisions of the policy, $200 salvage value, and Turk's deferred credit of $133 the amount of plaintiff's recovery was determined to be $666.63, a sum including expenses to the plaintiff in connection with repossession amounting to $52.42.

■ The witness Keith testified the value of the automobile was that shown in the dealer's blue book, $1,065. Further along he testified such value was $1,095. There was no other testimony on the point. It was objected at the trial that he was not qualified to testify respecting the value of the automobile because he had not seen it just before the accident. The lower court ruled that as the witness had seen it shortly after the mishap, and as he had been in the financing business some fifteen years and was frequently called upon to appraise automobiles, he was qualified to testify as to the value of the automobile. In our opinion, such ruling was correct. Furthermore, even giving the defendant the advantage of the lower evaluation, $1,065, the amount of plaintiff's recovery is still well under this value. We see no reversible error in this regard.

■ We agree with defendant's final point that it was error for the trial court

to award judgment in favor of Turk and Cooper for the sums already mentioned. Although they were named as defendants, there was no issue between them and the defendant insurance company; at no time did they seek any recovery on the policy of insurance. Therefore, the judgment is affirmed as to the plaintiff and reversed as to the defendants Turk and Cooper. It is so ordered.

COMPTON, C. J., and LUJAN, SADLER and KIKER, JJ., concur.

On Motion for Rehearing

McGHEE, Justice.

▮ The appellant, Traders & General Insurance Company, on motion for rehearing, calls our attention to the fact inadvertently overlooked by us that § 64-5-1, N.M. S.A., 1953 Comp., cited and quoted in our earlier opinion in this case, did not become effective until July 1, 1953, a time after the conditional sale contract here involved was assertedly filed with the New Mexico Motor Vehicle Department. Therefore, it is true that such section had no application to the present case, but another section of our statutes was at that time applicable: Section 68-115, N.M.S.A. 1941 Comp., Ch. 140, § 10, Laws 1941, as amended, Ch. 73, § 1, Laws 1943, and repealed by Ch. 138, § 121 (15), Laws 1953. It reads:

" 'Every chattel mortgage, conditional sales contract, lease, purchase lease, sales lease, contract or other instrument in writing having the effect of a mortgage or a lien or encumbrance upon, or intended to hold, the title to any vehicle in the former owner, possessor or grantor shall hereafter be filed with the motor vehicle department. Except that encumbrances against vehicles not titled in New Mexico shall be filed with the county clerk of the county where the vehicles are so encumbered.' "

Thus, while the language of our present statute differs from its predecessor, for present purposes, the force of each is the same. In Attorney General's Opinion No. 3825, 1941-1942, p. 71, et seq., addressed to the Motor Vehicle Commissioner, the question was posed: "Under the new law, is it necessary to have contracts (filed with the Motor Vehicle Department) acknowledged by a Notary Public?" and answered as follows:

"The new law contains no statement as to the form and content of security devices. I am of the opinion that our general law still applies. Section 21-301, New Mexico Statutes Annotated, 1929 Compilation, (§ 50-11-1, 1953 Compilation), requires that security devices be acknowledged. In this connection I wish to advise you that when such an instrument is not properly acknowledged, it is not entitled to be filed in your office."

It follows that although the original opinion filed in this case referred to a statute not in effect at the time material thereto, such error was harmless, as the decisive principle was fully applicable under the earlier statutes, and the disposition of this appeal under our earlier opinion is reaffirmed.

It is so ordered.

COMPTON, C. J., and LUJAN and SADLER, JJ., concur.

KIKER, J., not participating.