**TRI–STATE INS. CO. v. FORD et al.**
No. 2387.

United States District Court,
D. New Mexico.

March 6, 1954.

Gilbert, White & Gilbert, Santa Fe, N. M., for plaintiff.

Donald D. Hallam, Dewie B. Leach, Joseph O. Walton, Hobbs, N. M., and Harry L. Bigbee, Santa Fe, N. M., for defendants.

WALLACE, District Judge.

The plaintiff, Tri-State Insurance Company, an Oklahoma corporation, duly licensed to transact insurance business in the State of New Mexico, brings this action pursuant to the Federal Declaratory Judgment Act [1] to determine what liabilities, if any, exist by virtue of two policies issued by plaintiff to the defendant, Marshall C. Ford.

Both the physical damage policy [2] and the public liability policy [3] were issued on January 7, 1953, through plaintiff's local soliciting agent at Sweetwater, Texas. On February 22, 1953, the insured while driving his car in which defendants Inez Ford, Jake Q. Carrell, Leola Carrell, J. W. Harris and Callie S. Harris were riding as passengers collided with a car being driven by defendant James A. Abshier, in which car defendants Terry Mitchell, Homer A. Mitchell, Marie Mitchell, Wanda Lee Abshier, James Clifford Abshier and Sidney Stephen Abshier, were riding as passengers.

This Court is called upon to determine the coverage, if any, given by the physical damage policy to the insured as well as the insured's mortgagee, Southwestern Investment Company, a Texas corporation; and, the coverage, if any, given by the public liability policy insofar as the passengers in both cars are concerned.

Although the Court must deal separately with the rights of the parties in relation to the physical damage policy

and the public liability policy the introduced evidence established the following pertinent facts:

1. At the time the two policies in question were obtained, the insured, Marshall C. Ford, represented to the plaintiff's local soliciting agent, Marshall Morgan, that no policy of automobile insurance issued to the said insured had been cancelled by an insurer during the previous year; this representation was false inasmuch as at least five different policies issued by five different companies had been cancelled during the preceding twelve month period.

2. The plaintiff insurance company relied on the false and fraudulent representation made by the insured when the two policies in question were issued; and, said misrepresentation was material to the risks in said policies of insurance.

3. The plaintiff insurance company would not have issued these two policies, or either of them, or permitted them to remain in force, if the plaintiff company had known or learned of the cancellations which had occurred in the year prior to the issuance of these policies.

4. The insured's false representation was embodied in the written terms of both policies of insurance by language which appeared in Item 6(b) of the declarations which provided:

"During the past year no insurer has cancelled any automobile insurance issued to the named insured."

with a notation in the public liability policy of "no exception" and a notation in the physical damage policy of "nil".

5. Each of the two insurance policies provided in the policy declaration:

"By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, and that this policy embodies all agreements existing between himself

---

1. 28 U.S.C.A. §§ 2201, 2202.

2. Tri-State Insurance Company Automobile Policy No. CA 202882.

3. Tri-State Insurance Company Automobile Policy No. CA 202881.

and the company or any of its agents relating to this insurance."

6. The plaintiff insurance company (that is, the home office or corporate officers) did not discover the false representation of the insured until March 30, 1953; however, the local soliciting agent of the plaintiff corporation was guilty of negligence in not further verifying the truthfulness of the insured's representation inasmuch as the facts and circumstances existing at the time the policy application was written were such as to have placed a reasonably prudent person in the position of the local soliciting agent on notice of possible misrepresentation; and, in the exercise of reasonable diligence said agent could have learned of said misrepresentation prior to the time the accident in question occurred.[4]

7. The plaintiff insurance company on or about April 3, 1953, upon determining the falsity of the representation in question notified the defendants Marshall C. Ford (the insured) and Southwestern Investment Company, Inc. (the insured's mortgagee) that the insurer was rescinding the policies and tendered the full amount of the policies' premiums; this tender was refused.

8. The defendant Southwestern Investment Company, Inc. (the insured's mortgagee) relied upon the issuance by plaintiff of the physical damage policy to protect its mortgage on the insured's car, and in reliance thereon cancelled out a single interest policy which was in effect to protect the mortgagee's interest during the time the insured himself had no insurance. However, by the exercise of reasonable diligence at the time the mortgagee received a duplicate copy of the physical damage policy containing the loss-payable clause in favor of said mortgagee, the mortgagee could readily have learned the physical damage policy had been obtained by means of a material misrepresentation on the part of the insured, and said mortgagee was guilty of neglect in not so learning.

9. Subsequent to the accident in question the local soliciting agent of plaintiff collected from the defendant insured the premium on the issued public liability policy; however, at such time neither the soliciting agent nor the plaintiff insurance company (that is, the home office or corporate officers) knew of the falsity of the representation made by the insured, although as recognized in Finding No. 6, supra, the local agent was guilty of neglect in not previously learning of such misrepresentation.

10. On or about March 17, 1953, the plaintiff company notified the defendant insured, Marshall C. Ford, that the public liability policy would be cancelled as of March 28, 1953; at such time the plaintiff company had no knowledge of the false representation by the insured.

11. A bona fide and justiciable controversy exists between the parties hereto in regard to the relative rights and liabilities of the parties by virtue of the two issued policies.

In determining the rights of the parties litigant the Court will deal with the two policies separately:

### I.
### The Physical Damage Policy.

A. The Insured's Rights Under the Policy.

As recognized in the enumerated findings of facts, the insured secured this policy by fraudulently representing a fact material to the involved risk; and, although the soliciting agent for the plaintiff was negligent in not establish-

---

4. The fact that the applicant for insurance had come from another town to do business with this local agent, for the first time, coupled with the provision in the letter from Southwestern Investment Company to the insurance applicant which was read by the agent and stated in part, "After our talk with you today on the phone we checked your file and found that the collision coverage had been cancelled by Boren-Durham Agency, * * * ", certainly would have induced a reasonably prudent person to verify whether within the last year the applicant had policies which had been cancelled out by other insurers.

ing that said representation was false, the policy was in fact issued in reliance upon the insured's false warranty. Under such circumstances the insured has no standing in a court of equity to resist a petition for cancellation.

Although there is a rule, applicable particularly in the law of sales, that where the one on whom the alleged fraud was perpetrated, knew or could have known of the fraud, said person cannot urge the misrepresentation in order to vitiate the contract between the parties,[5] such rule has no application in the instant case.

 The plaintiff company, on whom the fraud was practiced, had no *actual* knowledge of the misrepresentation and cannot be deemed to have waived this material risk element and to have knowingly entered into the contractual arrangement.[6] Although, admittedly the plaintiff's soliciting agent had facts which upon inquiry would have revealed the truth the plaintiff company cannot be bound by the agent's failure to inquire inasmuch as this soliciting agent was not clothed with ostensible authority to waive a matter so material to the risk, even if said agent had possessed *actual* and not merely *constructive* notice himself.[7] The insured cannot be purged from his own fraud upon the rationale that the plaintiff through its soliciting agent engaged in conduct which in legal fiction amounted to a waiver of a material warranty by the insured *when the agent accepted* the premium payments.[8] The case at bar must be sharply distinguished from those lines of cases wherein the agent of the insurer in order to write the policy either mistakenly or fraudulently fills in an insurance applica-

5. As observed in 61 A.L.R. 513: "Generally, where the seller's representations are such as would excite the suspicions of a reasonably prudent man, or where there is some suspicious circumstance connected with the representations, it is the buyer's duty to pursue his opportunity to investigate and to ascertain the truth or falsity of the representations, and, failing to do so, he cannot avail himself of the seller's misrepresentations. (Citing cases.)"

6. Cf. Landers v. Cooper, 1889, 115 N.Y. 279, 22 N.E. 212, 215, 5 L.R.A. 638 wherein the Court said: "The most that can be said is that the agent made a mistake as to the facts. But this was not equivalent to notice of an outstanding insurance so as to charge the company. The plaintiff, to avoid the effect of the condition, was bound to show that, as matter of fact, the agent knew of the outstanding insurance. It was not sufficient to relieve the plaintiff that the agent was put upon inquiry, or might, by the exercise of diligence, have ascertained the truth. The insured, who had procured the policies in the Glens Falls Company, could not rely upon the assurance of the agent, himself making no investigation, and cast the burden of the agent's mistake upon the Watertown Insurance Company. It was not the agent's duty to ascertain the fact as to prior insurance, and his assumption that no such insurance existed did not bind his principal."

7. Distinguish the instant case from Home Mut. Life Ins. Ass'n of Brownwood v. Pool, Tex.Civ.App.1929, 18 S.W.2d 693, wherein the agent was clothed with authority to not only write the application but to in fact determine whether or not the life insurance risk was good. Obviously, when the agent issued the policy knowing of the previous ill health of the insured such knowledge was binding upon the insurer.

8. Thus, the case at bar does not call for an application of the rule recognized in 29 Am.Jur. § 807: " * * * that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions. The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it voidable at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition and to execute a binding contract, rather than to have deceived the insured into thinking he is insured when in fact he is not, and to have taken his money without consideration."

tion warranty when the warranted representation material to the risk was in fact truly and accurately stated by the prospective insured.[9] Obviously, where the applicant in the utmost of good faith truthfully states all facts pertinent to inquiry and pays his premium with the understanding that the policy has been accepted by the insurer, any negligent or fraudulent conduct on the part of the agent must be imputed to the insurance company and not to the insured.

■ In addition, the insured in the case at bar cannot by means of parol evidence attempt to impeach the unambiguous terms of the written insurance contract.[10]

■ Condition 20. of the instant physical damage policy provides:

"Changes—Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the secretary."

And, significantly, condition 24. provides further:

"Declarations—By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or

any of its agents relating to this insurance."

The insured cannot at this juncture urge that the plaintiff's soliciting agent waived a material part of the involved risk and thus make of no legal consequence the insured's misrepresentation.

B. The Mortgagee's Rights Under the Policy.

The defendant, Southwestern Investment Company Inc., insists that irrespective of the insured's fraud it as mortgagee is entitled to protection under the instant policy for the reason that a single-interest policy protecting said mortgagee's interest was cancelled in reliance upon the plaintiff's issuance of the policy in question; and, that as between the insurer and the mortgagee, where the agent of the insurer was guilty of negligence in not discovering the insured's fraudulent representation, the mortgagee, a completely innocent party should in equity be protected.

■ After careful consideration the Court has concluded that the defendant mortgagee can claim no benefit under the policy in controversy. Item 1. of the "Declarations" states in part:

"Loss Payee; Any loss under coverage D, E–1, E–2, F, G, H and I is payable as interest may appear to the named insured and Southwestern Investment Co., P. O. Box 718, Lubbock, Texas"

The phrase "payable as interest may appear" identifies this provision as a standard "loss-payable clause"; as such it is well settled that the rights of a mortgagee under such a loss-payable clause rise no higher than the rights of the insured.[11]

9. Lee v. Mutual Protective Ass'n of Texas, Tex.Civ.App.1932, 47 S.W.2d 402; Iverson v. Metropolitan Life Ins. Co., 1907, 151 Cal. 746, 91 P. 609, 13 L.R.A.,N.S., 866; Federal Life Ins. Co. v. Kras, 1935, 96 Colo. 589, 45 P.2d 636. See additional cases cited in 81 A.L.R. 852; 117 A.L.R. 795.

10. Cf. Satz v. Massachusetts Bonding and Insurance Company, 1926, 243 N.Y. 385, 153 N.E. 844, 59 A.L.R. 606, wherein the

Court held that where warranties are written into a policy of burglary insurance, that no similar policy has been denied to or canceled against applicant, and notice to read the policy appears upon it, parol evidence is not admissible to show notice to the insurer's agent of the falsity of such warranties during the negotiations for the policy.

11. Hamburg-Bremen Fire Ins. Co. v. Ruddell, 1904, 37 Tex.Civ.App. 30, 82 S.W.

■ In addition, the facts in the instant case do not call for an application of the equitable doctrine involving two innocent parties where one party has altered its position in reliance upon the acts and conduct of the other. Although the defendant mortgagee did act in reliance upon the issuance by plaintiff of the policy in question, said mortgagee itself knew of at least two prior cancellations of policies of the named insured within the one year prior to the issuance by plaintiff of this contested policy; such knowledge constituted constructive, if not actual, notice that the insured had obtained the policy in question by fraudulent means. Doubtless, as a practical business matter the defendant mortgagee was more than pleased to be able to cancel out its single-interest policy, the premium on which was paid by the mortgagee, and substitute on its security the instant policy; however, the mortgagee was in possession of too much information in regard to the insured's insurability to not at least constructively become a party to the fraud worked on the plaintiff company. The knowledge possessed by the mortgagee was sufficient to nullify any right to equitable relief upon the basis that as between the insurer and the mortgagee, the mortgagee was the more innocent of the two and should in good conscience be protected.

## II.

### The Public Liability Policy.

■ Because of the previously mentioned fraudulent representation, the defendant insured is precluded from asserting any rights under this policy just as he is precluded from asserting any claim under the physical damage policy. However, the additional issue which remains is whether the defendants who received personal injuries in the collision in question have rights arising out of this public liability policy which are independent of and superior to those of the insured.

■ Counsel for these defendants takes the position that the Texas Financial Responsibility Act Vernon's Ann.Civ. St. art. 6701h, expressly vests in any person injured by another person who at the time holds a public liability policy the right to proceed against the insurer irrespective of whether the insurer has some legitimate ground for avoiding the policy as to the insured. This argument is based on the section of the Texas statute, § 21, which provides:

"Every *motor vehicle liability policy* shall be subject to the following provisions which need not be contained therein: 1. The liability of the insurance company with respect to the insurance required by this Act shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance company and the insured after the occurrence of the injury or damage; *no statement made by the insured or on his behalf and no vio-*

826; Delaware Insurance Co. of Philadelphia v. Greer, 8 Cir., 1903, 120 F. 916; Brecht v. Law, Union & Crown Ins. Co., 9 Cir., 1903, 160 F. 399. As phrased in the Hamburg case, supra, 82 S.W. at pages 826, 827: " * * * The contract proper is between the insurance company and the owner of the property, and the effect of the clause directing that the loss, if any, shall be payable to the mortgagee, is but to name or appoint that person as the party entitled to receive payment of the fund in the event a loss becomes payable under the terms of the policy. But whether or not any loss is payable at all is de-

pendent entirely upon the performance of the terms of the contract between the insurer and the insured. The policy in this instance expressly stipulated that the same should be void in case of any fraud upon the part of the insured; and, if it did not, a sound public policy would not permit him to recover by his own criminal act, and, since the appellee must claim whatever rights he has through and by virtue of the mortgagor's contract, his claim also falls to the ground. (Citing cases.)"

The rights of a mortgagee under a collision loss must be distinguished from the statutory right now given a mortgagee in

*lation of said policy shall defeat or void said policy; \* \* \*."* (Emphases supplied.)

This section taken alone implies that the rights of third parties may not be derivative and dependent on the rights of the insured. However, other sections of the Texas Act make it clear such a right does not become fixed until the insurance company issuing such policy has certified said policy to the Department of Public Safety in order that the insured may regain his driver's license previously revoked for failure to pay a judgment.[12] Logically, once the insurance company so certifies and in reliance thereupon the Department of Public Safety reinstates the driver, the insurance company then has a direct responsibility to the public.

Naturally, the financial responsibility acts of individual states, just as all other statutes, must be individually interpreted. Significantly, the view taken by the Texas legislature is one followed in a majority of other jurisdictions although in several jurisdictions the public liability insurers become directly obligated to a third person at the time said third person is injured.[13]

The Court in Hill v. Standard Mutual Casualty Company,[14] in referring to the Indiana Responsibility Law, a statute similar to the Texas statute, observed:

"In our opinion this particular law seeks to increase public protection in respect to motor vehicle operation. But the Indiana Law is not a general compulsory insurance law. It merely guarantees the ability of a selected group of drivers or owners to respond in damages for future accidents. In other words, the Indiana Financial Responsibility Law protects the victim against the automobile operator's second accident, and in this case it was the operator's first accident. \* \* \*"

And as recognized by the Kentucky Court in Travelers Insurance Company v. Boyd:[15]

"The policy herein sued on was not a policy which had been executed in accordance with the 1936 act as proof of ability of the original defendants Williams or Stewart to respond in damages nor was it so alleged in the petition. Therefore the policy sued on never came within the purview of the 1936 act because the license of Williams, the policyholder, had never been suspended, no unsatisfied judgment had been reported to the motor department and no certificate of insurance had ever been issued to him or been filed with the motor department. \* \* \* The whole spirit and tenor of the 1936 act is that it acts *in futuro*. It does not apply to the first accident nor is it applicable where the insured had not been required to furnish proof of his ability to respond in damages by taking out a liability policy covering an accident occurring thereafter. While the 1936 act, as it relates to the question involved, has not been construed in this jurisdiction similar acts have been so construed

---

Texas under a fire loss. See Dumphy v. Commercial Union Assurance Co. Ltd., Tex.Civ.App.1911, 142 S.W. 116, 118; and, Wyche v. Trinity Universal Insurance Co., Tex.Civ.App.1946, 198 S.W.2d 158.

12. "A 'motor vehicle liability policy' as said term is used in this Act shall mean an owner's or an operator's policy of liability insurance, certified as provided in Section 19 or Section 20 as proof of financial responsibility \* \* \*." 19

Vern.Tex.Civ.Stat. Art. 6701h, § 21(a). Cf. §§ 19(a), 20(a).

13. Hartford Accident and Indemnity Company v. Wolbarst, 1948, 95 N.H. 40, 57 A.2d 151. For a résumé of the New Jersey law on this point read Continental Casualty Company v. Lanzisero, 1935, 119 N.J.Eq. 166, 181 A. 170. Century Indemnity Company v. Simon, D.C.1948, 77 F.Supp. 221.

14. 7 Cir., 1940, 110 F.2d 1001, 1006.

15. 1949, 312 Ky. 527, 228 S.W.2d 421, 423.

in other jurisdictions. They hold that first accidents do not come within the purview of such acts. (Citing cases.)"

It is only reasonable that the Texas Act in establishing a liability between the insurer and third persons should restrict such liability to instances wherein a certification has been made by the insurer that the insured is in a position by virtue of insurance to financially respond in damages in the event of future accidents. To hold in the absence of clear legislative intent that every insurer who issues a public liability policy become irrevocably responsible to an injured third person at the time the accident occurs would be to place an unreasonable and unconscionable burden upon the insuring company. Such a statutory construction would place a premium upon the practice of deceit and fraud by all prospective purchasers of insurance.

 Because of the insured's fraudulent representation and inasmuch as there is no convincing evidence that the plaintiff insurance company by its conduct waived its right of cancellation subsequent to the accident in question,[16] the plaintiff is entitled to a decree declaring both policies void and of no effect as to all parties defendant.

Counsel should submit a journal entry to conform with this opinion within fifteen days.

16. Subsequent to the accident in question the local soliciting agent was without authority to do acts which might waive the plaintiff's right to cancel the policies involved. Wyche v. Trinity Universal Insurance Co., Tex.Civ.App.1946, 198 S. W.2d 158. And any acts done by the plaintiff company itself prior to the time it actually tendered a full return of the insurance premiums could not amount to a waiver of a right of cancellation inasmuch as the plaintiff company had no notice of the fraud which had been perpetrated. At most the plaintiff company had facts which when diligently investigated uncovered the fraud in question; and, after such an investigation the plaintiff company promptly gave notice of rescission.

See Harris v. Allstate Ins. Co., Tex.Civ. App.1952, 249 S.W.2d 669 wherein the Court held that insurer had right to forfeit policy for automobile owner's misrepresentation that no automobile insurance issued to him had been cancelled within two years of his application; and, the mere fact that the insurer moved wrecked automobile to garage in city distant from scene of accident before it had notice of misrepresentation of material fact did not constitute waiver of insurer's right to forfeit automobile policy for such misrepresentation, where as soon as insurer learned of misrepresentation it forfeited policy.