**NEW ZEALAND INSURANCE COMPANY, Ltd.**

v.

Calvin **HOLLOWAY**, Leroy Holloway, Mrs. Leroy Holloway, Joseph Broussard, Sr., individually and on behalf of his minor son, Joseph Broussard, Jr. and Gillard Romero.

No. 4149.

United States District Court,
W. D. Louisiana, Lake Charles Division.
Sept. 8, 1954.

W. Ford Reese, New Orleans, La., Richard A. Anderson, Lake Charles, La., for plaintiff.

H. Purvis Carmouche, Crowley, La., for defendants.

HUNTER, District Judge.

Tried to the court, the action is for a declaratory judgment[1]. Jurisdiction exists[2].

Here, there is presented the situation where an insurer seeks a declaration of non-liability on an automobile liability policy issued by it, because of fraud on the part of the insured in its procurement. The defendants are the insured, his brother (the actual owner and user of the insured vehicle) and the persons injured by the alleged recklessness of the brother. The claim of the insurer is in substance to cancel the contract ab initio.

### Findings of Fact.

The issues of fact and law having come on to be heard, and due deliberation having been had, the court makes the following findings:

(1) On October 2, 1952, one Pierre LeBlanc called by telephone Mrs. Evadale Touchet of the J. Maxine Roy, Inc. Insurance Agency in Lafayette, Louisiana, on behalf of Mr. Holloway, and stated to Mrs. Touchet that the application for public liability insurance on a certain Chrysler Saratoga Sedan was *in the name of Calvin Holloway*, a grocer of 800 Bailey Street, Rayne, Louisiana. Mr. LeBlanc furnished Mrs. Touchet with the description of the vehicle and the coverage desired. *This business was not solicited by either Mrs. Touchet or the insurance agency.*

(2) Pierre LeBlanc was not the agent of J. Maxine Roy, Inc., nor of the plaintiff, but he was the agent of the defendants, Leroy and Calvin Holloway.

(3) Subsequent to the telephone conversation, and as a result thereof, policy No. AC 1001279 of the plaintiff insurance company was issued and mailed to the named insured to cover a certain 1952 Chrysler Sedan, bearing Serial No. 76523514. *The policy declared that the said automobile was owned solely, without exception, by Calvin Holloway.* The policy was to be effective as of October 2, 1952 through October 2, 1953.

(4) On February 23, 1953, defendant Leroy Holloway was operating said automobile on U. S. Highway 90 and had as passengers Mrs. Leroy Holloway, Gillard Romero and Joseph Broussard, Jr. While so proceeding the automobile left the highway and crashed into a wall, causing injury to Leroy Holloway and the others.

(5) On March 19, 1953, after this accident had occurred, the plaintiff, through Mr. John P. Holmes, its general agent in New Orleans, received a retail credit report (which had been ordered on October 6, 1952 on Calvin Holloway, in which it was disclosed that Calvin Holloway was a musician and not a grocer, *and that his brother Leroy Holloway (not Calvin) was the owner of the Chrysler vehicle involved.* Leroy Holloway was also the possessor and user of the car.

(6) On the same date that the retail credit report was received, the policy in question was ordered cancelled by Mr. Holmes and was cancelled by J. Maxine Roy, Inc. on March 20, 1953.

(7) This action for declaratory judgment was then brought by plaintiff against the defendants who ask this

---

1. 28 U.S.C.A. § 2201.

2. Under the diversity statute, 28 U.S.C.A. § 1332, plaintiff is a foreign corporation; defendants are Louisiana citizens domiciled in this district and division; more than $3,000 is in actual controversy.

court to determine the rights of the respective parties.

(8) Gillard Romero failed to answer, and a default was taken and confirmed as to this defendant. The other defendants have filed answers.

(9) The policy of insurance in question, among other things, provided certain provisions as follows:

Declarations

Item. 1.  Name of insured   Calvin Holloway
800 Bailey Street
Rayne, Louisiana

Occupation of the named insured is Grocery Store Proprietor

Item 3.  The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| Coverages | Limits of Liability | Premium |
|---|---|---|
| A  Bodily injury liability | $10,000 each person $20,000 each accident | $34.80 |
| B  Property damage liability | $ 5,000 each accident | 17.00 |
| C  Medical Payments | $ 1,000 each person | 7.00 |
| * * * | | |
| | Total Premium | $58.80 |

Item 4.  Description of the automobile and facts respecting its purchase by the names insured:

| Year | Trade Name | Model | Body Type | Serial No. | Engine No. |
|---|---|---|---|---|---|
| 1952 | Chrysler Saratoga | Sedan | Fordor | 76523514 | C52-8-25808 |

Item 6.  Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile, unless otherwise stated herein: No Ex.

Conditions

20.  *Changes*  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

24.  *Declarations*  By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

*     *     *     *     *     *

(10) Negotiations for the purchase of the vehicle in question were handled solely by Leroy Holloway, who traded in his own Oldsmobile Coupe, receiving $2,695 therefor. For the balance of $1,000, Leroy Holloway signed a note for $500 and paid $500 cash. Calvin Holloway (the named insured) did not participate in these negotiations.

(11) The real owner of the vehicle in question was Leroy Holloway, who was not the named insured, and who is afflicted with a physical impairment to his

left arm which is clearly discernible. Calvin Holloway *did not apply for the insurance, pay the premium, or any part thereof, and never had the policy or the car in his possession.*

(12) The policy was obtained by defendant Leroy Holloway, through the active concealment of important facts and the giving of misinformation in which defendant Calvin Holloway silently acquiesced. The concealment was made with intent to deceive.

(12) Had the true representation been made that Calvin Holloway, the named assured, was a musician and not a grocer, this policy would have been immediately cancelled, as musicians are on what is called the prohibited list, a list of risks which the company will not voluntarily write. Had Leroy Holloway (the real and true owner, and sole user) been the applicant, this policy would have been immediately cancelled. *Had the ownership of the vehicle been declared as joint ownership by Calvin and Leroy Holloway, the policy would have been immediately cancelled or would not have been issued by Mrs. Sellers, since joint ownership is also on the prohibited list.*

(14) This cancellation, in the normal course of events, would have been long before the accident of February 23, 1953.

(15) The New Zealand Insurance Company, Ltd., did not discover that the representations made in the declarations were false and had been concealed until the 19th day of March, 1953.

(16) Neither the local agent of the plaintiff insurance company nor the plaintiff insurance company was guilty of any neglect or delay in either the cancellation or in not previously learning of the misrepresentation.

(17) The New Zealand Insurance Company, Ltd., has deposited in the Registry of this Court the sum of $58.80, the premium of said policy heretofore paid to New Zealand Insurance Company, Ltd., by some one supposedly on behalf of Calvin Holloway.

(18) Defendant. Leroy Holloway · did not have public liability insurance on the

Oldsmobile, the car he "traded in" on the Chrysler Saratoga Sedan.

(19) Neither the defendant, Calvin Holloway, nor Leroy Holloway, reported the accident to any department of the State of Louisiana and particularly to the Commissioner of the Department of Public Safety.

(20) No pleading, evidence, or proof whatsoever was offered or produced by the defendants to show:

(a) A report of the accident to the Commissioner of the Department of Public Safety of Louisiana, as required by the Louisiana Revised Statute 32:871.

(b) The written certificate of New Zealand Insurance Company certifying that there was in effect a motor vehicle liability policy for the benefit of Leroy or Calvin Holloway, in accordance with LSA–R.S. 32:898.

(c) An unsatisfied judgment reported to the Commissioner.

(21) Defendant Leroy Holloway's driver's license was not suspended.

(22) A bona fide and justifiable controversy exists between the parties hereto in regard to the relative rights and liabilities of the plaintiff and defendants by virtue of the policy. *The defendants failed to establish prior knowledge by the plaintiff, or by the agent sufficient to sustain their plea of estoppel.*

Conclusions of Law.

■ (1) Under Louisiana law, no material misrepresentation or warranty made in the negotiation of an insurance contract shall be deemed material or defeat or void the contract unless the misrepresentation or warranty was made with intent to deceive. LSA–R.S. 22:- 619.

(2) The converse of (1) above is true, and if the misrepresentation was material and if it was made with intent to deceive, such misrepresentation will void the contract of insurance.

(3) The defendant Holloway, when he accepted the policy of insurance with full knowledge of its contents, and this he is presumed to have done, adopted as his

own all the representations and warranties therein contained.

■ (4) Here, the statement as to the ownership of the Chrysler automobile was an existing fact susceptible of exact knowledge and correct statement. The Holloways knew that the statement they gave as to ownership was false and they intended that the insurance company should rely on it, and but for the false representation the policy would not have been issued. Therefore, the plaintiffs are entitled to cancel the policy insofar as the Holloways are concerned [3].

The real storm center of this litigation is whether the other defendants not parties to the contract or parties to the fraud who received personal injuries in the collision have rights arising out of this public liability policy which are independent of and superior to those of the Holloways.

Counsel for defendants argue that the Louisiana Motor Vehicle Safety Responsibility Act [4] expressly vests in the person injured a right to proceed against the insurer, irrespective of whether the insurer has some legitimate reason for avoiding the policy as to the insured. This contention is based on the section of the statute which provides:

"F. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

"(1) The liability of the insurance carrier with respect to the insurance required by this Chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; *said policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy;*" LSA–R.S. 32:900, subd. F(1).

■ The applicability of the cited section is by its own terms precisely limited to motor vehicle liability policies, which are automobile liability policies certified, as provided in LSA–R.S. 32:-898, or LSA–R.S. 32:899, as proof of financial responsibility [5]. Accordingly, the policy here involved is not a motor vehicle liability policy within the purview of the act because it is conceded that it was not certified by the insurer in accordance with LSA–R.S. 32:898 or 32.899, as proof of financial responsibility [6].

---

3. Neither plaintiffs, Mrs. Sellers, nor J. Maxine Roy, Inc., had any knowledge of the true facts concerning ownership, possession and use of the car.

4. LSA–R.S. 32:851 et seq.

5. LSA–R.S. 32:900, subd. A: "A 'Motor Vehicle Liability Policy' as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued * * * by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured."

6. LSA–R.S. 32:898:
"§ 898. Certificate of insurance as proof
"A. Proof of financial responsibility may be furnished by filing with the commissioner the written certificate of any insurance carrier duly authorized to do business in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certificate, and shall designate by explicit description or by appropriate reference all motor vehicles covered thereby, unless the policy is issued to a person who is not the owner of a motor vehicle.

"B. No motor vehicle shall be or continue to be registered in the name of any person required to file proof of financial responsibility unless such motor vehicle is so designated in such a certificate. Acts 1952, No. 52, § 19."
LSA–R.S. 32:899:
"§ 899. Certificate furnished by nonresident as proof

We have been unable to find decisions by Louisiana courts or by federal courts sitting in Louisiana on the subject. We, therefore, turn to the jurisprudence of other states who have adopted the uniform Motor Vehicle Safety Responsibility Law. With but one exception [7], every other court in this country faced with the same issue has resolved it the same way, namely: that the Motor Vehicle Liability Act has no effect unless the policy was actually required and certified under the Act [8]. It is our opinion that under the facts presented the courts of Louisiana would follow the overwhelming weight of authority. Accordingly, we conclude the law to be as follows:

■ (5) Under the Louisiana Motor Vehicle Safety Responsibility Act, providing that the liability of insurance carrier with respect to insurance required, shall become absolute whenever injury or damage covered by *a motor vehicle liability policy* occurs. Words "motor vehicle liability policy" refer only to a policy which has been certified as proof of future financial responsibility as provided in the Act itself. The policy involved was not so certified and never came within the purview of the Act. The Act has no effect on policy defenses unless the policy was actually required and certified.

One issue remains: Does the Louisiana Direct Action Statute have any import in this case [9]? It is the contention of defendant that the injured parties' claim against the insurance company

"A. The non-resident owner of a motor vehicle not registered in this state may give proof of financial responsibility by filing with the commissioner a written certificate or certificates of an insurance carrier authorized to transact business in the state in which the motor vehicle or motor vehicles described in such certificates is registered, or if such non-resident does not own a motor vehicle, then in the state in which the insured resides, provided such certificate otherwise conforms to the provisions of this Chapter, and the commissioner shall accept the same upon condition that said insurance carrier complies with the following provisions with respect to the policies so certified:

"(1) Said insurance carrier shall execute a power of attorney authorizing the commissioner to accept service on its behalf of notice or process in any action arising out of a motor vehicle accident in this state; and

"(2) Said insurance carrier shall agree in writing that such policies shall be deemed to conform with the laws of this state relating to the terms of motor vehicle liability policies issued herein. * * * "

7. Hartford Accident & Indemnity Company v. Wolbarst, 1948, 95 N.H. 40, 57 A.2d 151. For a résumé of the New Jersey law on this point read Continental Casualty Company v. Lanzisero, 1935, 119 N.J.Eq. 166, 181 A. 170. Century Indemnity Company v. Simon, D.C.1948, 77 F.Supp. 221.

8. Hoosier Casualty Co. v. Fox, D.C., 102 F.Supp. 214; Tri-State Insurance Co. v. Ford, D.C., 120 F.Supp. 118; Hill v. Standard Mutual Casualty Co., 7 Cir., 110 F.2d 1001; State Compensation Insurance Fund v. Bankers Indemnity Insurance Co., 9 Cir., 106 F.2d 368; Cohen v. Metropolitan Casualty Insurance Co., 233 App.Div. 340, 252 N.Y.S. 841.

9. LSA–R.S. 22:655, as amended: "No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect * * *. The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state."

**648**

under the direct action statute is not to be prejudiced by any misrepresentation or equities existing between the insured and the insurer.

The Legislature, in enacting LSA–R.S. 22:655, gave an injured person or his heirs, at their option, the right of direct action against the insurer, but was careful to add the words "within the terms and limits of the policy", and the statute goes further and states:

"It is the *intent* of this Section that any action brought hereunder *shall be subject to all* of the lawful conditions of the policy or contract and *the defenses which could be urged by the insurer to a direct action brought by the insured*, provided the terms and conditions of such policy or contract are not in violation of the laws of this state." (Italics added.)

We do not comprehend how the plain words "defenses which could be urged by the insurer to a direct action brought by the insured" can be ignored or disregarded. To ignore these words, this court will have to read them out of the statute. This we will not do.

Attention has been directed to the decision of West v. Monroe Bakery, 1950, 217 La. 189, 46 So.2d 122, a case loaded with strong dissents. It is clearly not applicable. It is authority for the proposition that the rights of the injured party against tort-feasors crystallized at the moment of the accident, and that those rights may not be prejudiced by the tort-feasors' *subsequent* breach of the policy. That case involved the effect of an assured's failure to give notice to the insurer as soon as practicable after the accident. Monroe Bakery cannot, in our opinion, and will not be construed as precluding a plea of non-coverage or fraud.

Although Phillips v. New Amsterdam Casualty, 193 La. 314, 190 So. 565, 568, was decided in 1939, its holding is certainly valid. The case was one which arose on the application of the judges of the Louisiana Court of Appeals, Second Circuit, for instructions. Suit was brought by the plaintiff against the insured and his insurer. The defendant insurer filed exceptions based on the insured's breach of contract in permitting a person under 18 years of age to drive. The policy provided that it did not apply while the automobile was being operated by a person in violation of any state or federal law. The court, through Judge Fournet, now Chief Justice, declared:

"We therefore conclude that the insured, having breached his contract with his insurer, the latter is thereby absolved from liability, as Act No. 55 of 1930 only extends to plaintiff a direct right of action against the insurer *within the terms and limits of the policy.*" (Italics added.)

Thus, the Supreme Court of Louisiana has held that where the policy breach occurred before the accident, it can be cancelled. Therefore, we conclude.

(6) Section 655 of Title 22 of LSA–Revised Statutes (as amended) grants a direct right of action against the assured and insurer to third persons injured by the negligent operation of automobiles. This right against the insurer crystallized at the moment of the accident and cannot be prejudiced by the insured's *subsequent* breach of policy, but where the policy breach occurred *before* the accident (and it certainly occurred here before when Leroy Holloway perpetrated his concealment as to the ownership, use and control of the car), cancellation may be obtained by the insurer, and in such cases the rights of the third parties under the voided policy are lost.

It is therefore the decision of this court that plaintiff is entitled to a judgment decreeing the policy void and of no effect as to all parties defendant.